J-S28037-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT L. ROHRBACH | : | |
| | : | |
| Appellant | : | No. 1696 MDA 2021 |

Appeal from the PCRA Order Entered November 15, 2021
In the Court of Common Pleas of Berks County
Criminal Division at No(s):  CP-06-CR-0004178-2016

BEFORE:  OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                **FILED: MARCH 16, 2023**

Appellant, Robert L. Rohrbach, appeals from the order entered in the Berks County Court of Common Pleas, which denied his first petition brought under the Post-Conviction Relief Act ("PCRA").[1]  We affirm.

This Court has previously set forth the facts and procedural history of this case as follows:

> On the evening of December 18, 2015, [Appellant] was at home with his girlfriend and victim, Deni[e]se McAvoy.  At some point that evening, they went upstairs to the bedroom and an argument ensued, which was heard by the next door neighbor.  Ms. McAvoy lay down in the spare bedroom while [Appellant] went to bed in the master bedroom.
>
> In the afternoon of December 19, 2015, [Appellant] contacted his estranged mother and asked her to come over to his house because something horrible had happened.  The mother came and he eventually told her that his girlfriend,

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

Ms. McAvoy, was dead. His mother called the police and told them that [Appellant] told her he had killed Ms. McAvoy. When the first police officer arrived and encountered [Appellant] for the first time, [Appellant] said, "I did it. I have mental problems. I killed her." More officers arrived and they found Ms. McAvoy's body in bed in the spare bedroom. The officers also found two handwritten notes from [Appellant]. One said: "Call Police. Suicide. Downstairs bathroom. Upstairs middle bedroom." The other had a short explanation of [Appellant] and Ms. McAvoy's tumultuous relationship and a short will. At the end it stated, "God forgive me." The officers also found a makeshift noose in the downstairs bathroom.

An autopsy of Ms. McAvoy's body was performed by Dr. Supriya Kur[u]villa. She determined after her examination that the manner of death should be classified as a homicide.

There was no dispute that [Appellant] was the only other person present when Ms. McAvoy died….

Supriya Kuruvilla, M.D., performed the autopsy and opined that the manner of death was homicide. Dr. Kuruvilla testified that Ms. McAvoy died from "complications arising from blunt force injury to the abdomen." The initial blow or blows were "to the abdominal wall which resulted in laceration of the pancreas," which in turn caused a hemorrhage. Those injuries led to the colon leaking fecal matter into the abdominal area, causing a fatal infection. Dr. Kuruvilla stated that the injury would not result in immediate death and estimated that the inflammation and complications occurred over a period ranging from "several hours to a couple of days." As to the initial damage to the pancreas, she explained that "less than .2 percent of injuries" in blunt force trauma cases are to the pancreas, as the organ is well-protected since it sits towards the back of the body. The doctor testified that the force required to cause injury to that organ is substantial and "usually requires a very focused and hard force in the middle of the abdomen which would then crush the pancreas against the spine and then produce injury." Dr. Kuruvilla stated that a fall down the stairs or other type of fall would not cause pancreatic lacerations "unless there's a fall onto an object that would explain that kind of impact." Additionally, Ms.

- 2 -

McAvoy exhibited several injuries to her face that were in various states of healing.

Samuel Land, M.D., a forensic pathologist, who the Commonwealth had retained to review Dr. Kuruvilla's findings, testified on behalf of [Appellant]. While he agreed that blunt force trauma caused injury to the pancreas and ruptured the colon, Dr. Land declined to rule the manner of death as a homicide or accidental. Instead, he concluded it was undetermined. Dr. Land stated that a fall down the stairs would be an atypical cause of such injuries, "but had there been something on the steps, something heavy, let's take a barbell and this woman had fallen onto the barbell, that would be a possibility." Dr. Land testified that he reviewed all the police reports, including the notes written by [Appellant], which did not change his opinion.

… Ms. McAvoy had been engaged to a man who developed cancer and died on May 15, 2014. Tara Shinn, Ms. McAvoy's work manager, testified that Ms. McAvoy and [Appellant] began dating about two weeks later. Shortly thereafter, Ms. McAvoy began coming to work smelling of alcohol and occasionally with bruises on her face. The two spoke in private and Ms. McAvoy indicated that [Appellant] was responsible for the injuries. Ms. McAvoy stopped coming to work as of July 11, 2014, and was officially terminated on August 12, 2014.

Mrs. Shinn shared her concerns with Pamela Rodriguez, a fellow co-worker. Mrs. Rodriguez was friends with Ms. McAvoy and noticed that the abuse had escalated after Ms. McAvoy and [Appellant] moved in together, which she said happened sometime in the fall. On at least three occasions, Ms. McAvoy showed Mrs. Rodriguez injuries and asked her to take photographs as proof. Mrs. Rodriguez took photos on November 7, November 20 and December 4, 2014. Ms. McAvoy told Mrs. Rodriguez to keep the evidence in case something happened to her.

On December 9, 2014, Ms. McAvoy called Mrs. Rodriguez crying and requesting Percocet that Mr. Rodriguez had due to a back injury. Mrs. Rodriguez left work and went to Ms. McAvoy's home and observed severe injuries. "The whole left side of her face and her shoulder were black, like not

- 3 -

black and blue, but black. Like her face was so swollen she was unrecognizable." Knowing that Ms. McAvoy had an outstanding warrant for unspecified alcohol charges, Mrs. Rodriguez reported her to the police to force Ms. McAvoy's removal from the home.

After Ms. McAvoy was released from jail, their socialization significantly decreased. However, on May 10, 2015, Ms. McAvoy showed up at the Rodriguez home nearly naked, bleeding and bruised. Mr. Rodriguez testified that he called his wife, who left work to come home. The two decided to call the police. The officer took no action as Ms. McAvoy did not want to pursue charges.

\*     \*     \*

Wilson Serrano-Aponte lived next door to Ms. McAvoy and [Appellant]. Their homes shared a wall and on December 18, 2015, the day before Ms. McAvoy died, he heard "screaming between a man and a lady ... [the] lady screaming like stop, stop, please stop." The screams started at approximately 10:30 p.m. and went on for five to fifteen minutes.

Another neighbor, Wendy Bobst, lived close to [Appellant]'s house and would see Ms. McAvoy walking around the neighborhood. They would chat a couple times per week. Ms. Bobst noticed bruising and cuts on multiple occasions; on one of these, Ms. McAvoy's eyes were almost swollen shut and her face was bruised. Eventually, Ms. McAvoy asked Ms. Bobst to write down a list of names and numbers. Ms. Bobst did so and Ms. McAvoy instructed her to contact those persons if anything ever happened to her. Those names included Pamela Rodriguez and Tara Shinn.

Finally, Erinn Fortson, an employee of Laurel House, a domestic violence agency that provided shelter and counseling, testified that on November 23, 2015, Ms. McAvoy called to inquire about shelter. The two spoke and Ms. McAvoy stated she would call back but never did.

*Commonwealth v. Rohrbach*, 1500 MDA 2018, unpublished memorandum,

at 1-3 (Pa. Super. filed Mar. 27, 2019), *appeal denied*, 655 Pa. 417, 218 A.3d

389 (2019) (internal citations omitted).

On April 12, 2018, a jury convicted Appellant of third-degree murder and aggravated assault. The court sentenced Appellant on May 8, 2018, to an aggregate term of 16 to 40 years' incarceration. On March 27, 2019, this Court affirmed the judgment of sentence, and our Supreme Court denied allowance of appeal on October 1, 2019. *See id.*

On October 2, 2020, Appellant timely filed a *pro se* PCRA petition, and the court subsequently appointed PCRA counsel. On August 2, 2021, PCRA counsel filed a ***Turner/Finley*** "no merit" letter and a motion to withdraw as counsel.[2] On September 23, 2021, the PCRA court issued notice of its intent to dismiss the petition without a hearing per Pa.Crim.P. 907, and granted counsel's petition to withdraw. Appellant did not respond, and the court denied PCRA relief on November 15, 2021. Appellant timely filed a *pro se* notice of appeal on December 14, 2021, per the prisoner mailbox rule.[3] On December 28, 2021, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant complied on January 19, 2022.

---

[2] ***Commonwealth v. Turner***, 518 Pa. 491, 544 A.2d 927 (1988); ***Commonwealth v. Finley***, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

[3] Appellant's PCRA petition was postmarked December 14, 2021. ***See Commonwealth v. Chambers***, 35 A.3d 34 (Pa.Super. 2011), *appeal denied*, 616 Pa. 625, 46 A.3d 715 (2012) (explaining prisoner mailbox rule provides that *pro se* prisoner's document is deemed filed on date he delivers it to prison authorities for mailing).

Appellant raises the following issues for our review:

> Appointed PCRA counsel … was ineffective for failing to investigate Pamela and Miguel Rodriguez, and discover evidence of their criminal activities, arrests, and or convictions to support Appellant's PCRA claim that they had "motivation to lie."
>
> Appointed PCRA counsel … provided ineffective assistance of counsel, when he failed to search the entire record for meritorious PCRA issues not recognized or raised by Appellant in his *pro se* PCRA petition, and document the act of searching the record for meritorious issues in his **Turner**/**Finley** letter, and finding none.

(Appellant's Brief at 2).[4]

"Our standard of review of [an] order granting or denying relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." **Commonwealth v. Parker**, 249 A.3d 590, 594 (Pa.Super. 2021) (quoting

---

[4] We note that Appellant's argument section in his brief raises many issues that are not included in the "statements of questions involved" or preserved in his Rule 1925(b) statement. Specifically, Appellant raises the following claims of ineffective assistance of counsel: 1) trial counsel's failure to comprehensively cross-examine Ms. Rodriguez about various details in her testimony to undermine her credibility; 2) trial counsel's inaccurate claim in the opening statement that the medical experts would state that they could not rule out the possibility that Ms. McAvoy's cause of death was a fall, when neither the Commonwealth nor the defense expert testified as such during the trial; and 3) direct appeal counsel's failure to develop the issues that counsel raised on appeal. As these particular claims were not preserved in Appellant's Rule 1925(b) statement, they are waived on appeal. **See Commonwealth v. Hansley**, 24 A.3d 410 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (explaining general rule that issues not raised in concise statement will be deemed waived for review; concise statement must properly specify error to be addressed on appeal).

***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (Pa.Super. 2013)).  "The PCRA court's factual findings are binding if the record supports them, and we review the court's legal conclusions *de novo*."  ***Commonwealth v. Prater***, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 386 (2021).

In his first issue on appeal, Appellant argues that PCRA counsel failed to properly investigate and evaluate Appellant's claim that trial counsel was ineffective for failing to discover evidence of Pamela and Miguel Rodriguez's criminal activities.  Appellant claims that his ineffective assistance claim had merit because Mr. and Mrs. Rodriguez sold drugs to Ms. McAvoy.  Appellant asserts that trial counsel had no reasonable basis for failing to discover evidence of their criminal activities and use it during cross-examination to demonstrate their "motivation to lie."  Appellant asserts that he was prejudiced by trial counsel's failure because Mrs. Rodriquez was the only witness to testify that Ms. McAvoy stated that Appellant caused her injuries.  Appellant concludes that PCRA counsel's failure to properly investigate this claim and discover evidence of Mr. and Mrs. Rodriguez's criminal activity constituted ineffective assistance of counsel, and this Court must grant relief.  We disagree.

"Counsel is presumed to have rendered effective assistance."  ***Commonwealth v. Hopkins***, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. *Commonwealth v. Chmiel*, 612 Pa. 333, 30 A.3d 1111 (2011).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.]" *Commonwealth v. Smith*, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004) (quoting *Commonwealth v. Geathers*, 847 A.2d 730, 733 (Pa.Super. 2004)).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his

client's interests." ***Commonwealth v. Kelley***, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting ***Pierce, supra*** at 524, 645 A.2d at 194-95).

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

***Commonwealth v. King***, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting ***Sandusky, supra*** at 1043-44).

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." ***Commonwealth v. Spotz***, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014) (internal citations and quotation marks omitted). "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." ***Hopkins, supra*** at 876 (quoting ***Commonwealth v. Chambers***, 570 Pa. 3, 22, 807 A.2d 872, 883 (2002)).

Instantly, PCRA counsel addressed Appellant's claim that trial counsel was ineffective for failing to investigate Mr. and Mrs. Rodriguez in his "no merit" letter. PCRA counsel concluded that Appellant's claim lacked arguable

merit because any evidence of Mr. or Mrs. Rodriguez's alleged illegal drug activity would have been irrelevant and inadmissible at trial. We agree with PCRA counsel's assessment. Any evidence demonstrating that Mr. or Mrs. Rodriguez sold drugs to Ms. McAvoy was not relevant to how Ms. McAvoy died under the facts of this case. *See* Pa.R.E. 401 (stating: "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action"). Likewise, evidence of Mr. or Mrs. Rodriguez's alleged illegal drug activity would have been inadmissible for impeachment purposes on cross-examination. *See* Pa.R.E. 608(b)(1) (stating: "[T]he character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct"). Further, we fail to see how such evidence demonstrates that Mr. and Mrs. Rodriguez had a "motivation to lie" during their testimony, as Appellant suggests.

Additionally, we agree with PCRA counsel's conclusion that Appellant could not demonstrate prejudice in light of the photographs of Ms. McAvoy's injuries, and testimony of Ms. Shinn, Mr. Serrano-Aponte, Ms. Bobst, and Ms. Fortson, all which corroborated the testimony of Mr. and Mrs. Rodriguez. *See Spotz, supra*. Thus, PCRA counsel properly assessed Appellant's claim and correctly determined that it was without merit. As counsel cannot be found ineffective for failing to advance a meritless claim, Appellant's first issue on

- 10 -

appeal fails. **See Poplawski, supra**.

In his second issue on appeal, Appellant asserts that PCRA counsel failed to properly examine the record to determine whether there were additional instances of trial counsel's ineffectiveness. Appellant argues that the "no merit" letter was deficient because PCRA counsel "did not include any additional errors that Appellant expected him to develop and add in an amended petition with the assistance of counsel." (Appellant's Brief at 9-10). Appellant further avers that PCRA counsel failed to speak with Appellant on the phone or in person despite multiple requests to do so. Appellant contends that "it defies logic to think that a *pro se* litigant, ignorant of the law, could possibly identify claims of trial counsel's ineffectiveness, or assist [PCRA] counsel with this task, when [PCRA] counsel was in the exclusive possession of both the trial transcript and the discovery file." (**Id.** at 25). Appellant concludes that PCRA counsel provided ineffective assistance of counsel by failing to consult with Appellant and review the record to identify all meritorious issues. We disagree.

Before counsel can be permitted to withdraw from representing a petitioner under the PCRA, Pennsylvania law requires counsel to file a "no-merit" brief or letter pursuant to **Turner** and **Finley**. **Commonwealth v. Karanicolas**, 836 A.2d 940 (Pa.Super. 2003).

The independent review necessary to secure a withdrawal request by counsel requires proof that:

1. PCRA counsel, in a "no-merit" letter, has detailed the nature and the extent of his review;

2. PCRA counsel, in the "no-merit" letter, lists each issue the petitioner wishes to have reviewed;

3. PCRA counsel must explain, in the "no-merit" letter, why petitioner's issues are meritless;

4. The PCRA court must conduct its own independent review of the record; and

5. The PCRA court must agree with counsel that the petition is meritless.

*Commonwealth v. Merritt*, 827 A.2d 485, 487 (Pa.Super. 2003).

If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief. By contrast, if the claims appear to have merit, the court will deny counsel's request and grant relief, or at least instruct counsel to file an advocate's brief.

*Commonwealth v. Wrecks*, 931 A.2d 717, 721 (Pa.Super. 2007) (internal citations omitted).

Instantly, PCRA counsel affirmed in the "no merit" letter that he reviewed the entire record in this case, including "the notes of testimony of the trial and the sentencing, the appellate briefs, and the Superior Court memorandum opinion." (*Tuner/Finley* "No Merit" Letter, filed 8/2/21, at 3-4). PCRA counsel further stated that he corresponded extensively with Appellant by way of letters to fully understand and evaluate the issues that Appellant wished to pursue. PCRA counsel's averments are supported by the contents of the "no merit" letter, which contains a careful and nuanced evaluation of each issue that Appellant wished to review and explains why

- 12 -

those issues lack merit. Further, the PCRA court conducted an independent review of the record and agreed with PCRA counsel's assessment that Appellant's PCRA petition was without merit.

Appellant fails to provide any support for his assertion that PCRA counsel was required to speak with Appellant on the phone or in person to evaluate possible PCRA claims. We decline Appellant's invitation to expand the requirements set forth in **Turner** and **Finley**. PCRA counsel communicated with Appellant via written correspondence, asking detailed questions to understand Appellant's issues and inquiring into details that could not be gleaned from the record. There is no indication that PCRA counsel's chosen form of communication hampered his ability to assess and evaluate Appellant's claims. The record demonstrates that PCRA counsel satisfied the mandates of **Turner** and **Finley**. **See Merritt, supra**. As such, there is no merit to Appellant's claim that PCRA counsel's review of this case was insufficient.[5] **See Sandusky, supra**. Accordingly, we affirm.

---

[5] As discussed above, Appellant's brief raises additional claims of trial and direct appeal counsel's ineffectiveness not preserved in Appellant's Rule 1925(b) statement. To the extent that Appellant is arguing that PCRA counsel was ineffective for failing to raise these newly identified claims, we note that Appellant's brief fails to properly develop or support this argument. Specifically, Appellant fails to properly address the reasonable basis and prejudice prongs as applied to PCRA counsel, trial counsel, or direct appeal counsel. The failure to develop a meaningful argument for all three parts of the test is fatal to Appellant's claim that PCRA counsel provided ineffective assistance. **See Sandusky, supra** at 1044 (stating boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy petitioner's burden to prove that counsel was ineffective).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/16/2023